IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ED NASH, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) No. _____ ) |
| NIZAR TRIGUI & HEND TRIGUI, | ) JURY DEMAND ) ) ) |
|     Defendants. | ) |

## COMPLAINT

Plaintiff Ed Nash files this complaint against Defendants Nizar and Hend Trigui for contributory copyright infringement and vicarious copyright infringement.

### NATURE OF THE ACTION

1. Defendants commissioned forgeries of two original paintings that visual artist Ed Nash created. This is a civil action to vindicate his rights.

### PARTIES, JURISDICTION, AND VENUE

2. Mr. Nash is a U.S. citizen who has been a Nashville resident for 20 years and is a well-recognized abstract artist of the South.

3. Defendants are individuals who resided in Nashville during all relevant times complained of in this Complaint. Upon information and belief, Defendants currently reside in Greenwich, Connecticut.

4. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C §§ 1331 and 1338(a).

5. This Court has personal jurisdiction over Defendants because they purposefully

availed themselves of the privilege of acting in Tennessee and caused the consequence of copyright infringement in Tennessee, the claims brought herein arise out of Defendants' activities within Tennessee, and the exercise of the Court's jurisdiction over Defendants is reasonable.

6. Upon information and belief, Defendants maintained a residence at 410 Saint Edmunds Court, Brentwood, Tennessee 37027 from approximately June 2017 to September 2024. In February 2018, Defendants attended the Antiques & Garden Art Show of Nashville, where they began their infringing conduct. Defendants used their Tennessee residence to undertake their infringing conduct, described below.

7. Defendants' actions, or consequences caused by those actions, have a substantial enough connection with this Judicial District to make this Court's exercise of personal jurisdiction over them consistent with the principles of due process.

8. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) because Defendants are subject to the Court's personal jurisdiction with respect to this lawsuit and a substantial portion of the events or omissions giving rise to the claims raised herein occurred in this District.

## FACTS

9. Mr. Nash is a fine artist, who is known for his large abstract paintings.

10. Mr. Nash was born in Letchworth Garden City England but has been a Nashville resident for twenty years.

11. At the age of 13, Mr. Nash was awarded an art scholarship to Bedford School in England. He then went on to study Fine Art and Psychology at Reading University - graduating Magna Cum Laude. After several years as an art dealer and appraiser, he went back to pursue his lifelong dream of becoming a full-time visual artist.

12. In 2013 he was awarded and Extraordinary Ability EB-1 Green Card by the USCIS and became a US Citizen in 2022.

13. Much of his work has a deep connection with the Japanese aesthetic known as "wabisabi," which can be described as one of beauty that is imperfect, impermanent and incomplete. His paintings and mixed media work are a response to modern day society's view of visual perfection. His work reflects and celebrates a patina produced through the passage of time and exposure to the elements.

14. In an article in *The Tennessean*, Mr. was named "The Number One Artist in Nashville to be Following." That article stated in pertinent part: "Ed Nash is turning heads across the country. You can spot his vivid large-scale paintings, usually over 6 feet tall, anywhere. His signature style is a use of bold color gradations in a variety of abstract and landscape designs. Nash's artwork is a favorite among interior designers, as they are the finishing touch to any room."

15. Mr. Nash's work can be found in countless collections across the United States and United Kingdom, including the homes of senators, musicians, actors, celebrities and luxury commercial and historical spaces such as the Dirksen Senate Office Building, Washington, D.C., Tennessee State Museum, Hunter Museum of Art, Blackberry Farms, Nashville International Airport, Mandarin Oriental Hotel, Hilton Hotels, Wailea Beach Resort and Hotel, Maui, The Conrad Nashville, Lyndhurst Collection, Suntrust Corporation Memphis TN, Baker Donalson Nashville, The Ayers Collection, Cooper Steel Headquarters, Baird Financial Services Nashville, Capital Christian Headquarters. Netflix Corporation, Barings Global Headquarters Charlotte NC, and The Lamborghini Headquarters, Sant'Agata Italy. His work has been featured in *Architectural Digest, Luxe Magazine, The Huffington Post, Milieu Magazine, Nashville Lifestyles Magazine, Atlanta Home and Lifestyles Magazine, Native Magazine, East Nashvillian, Big Sky Journal,*

3

Case 3:25-cv-00742    Document 1    Filed 07/02/25    Page 3 of 13 PageID #: 3

*Western Home Journal, Nashville Lifestyles Magazine, Classic Home Magazine, Southern Living and Traditional Home Magazine*, In 2022 his work was selected by Peace Interiors for a home that won the prestigious Palladio Award for Residential Interiors, and the Texas ICAA John Staub award for Residential Interiors and his work is published in Celebrity Designer Ray Booth's 'Evocative Interiors' Book. In February 2018, Mr. Nash attended the Antiques & Garden Show of Nashville (the "Show") as a vendor.

16. Mr. Nash paid to be a vendor at the show.

17. Mr. Nash brought several of his original paintings to the show to display for sale, including two paintings titled "Summer Mist" and "Becloud 5" (each an "Original" and together the "Originals").

18. Mr. Nash's works were displayed at the entrance of the show, with the Original Summer Mist being the first piece of art guests would encounter at the show.

19. While Defendants were attending the Show, they met Mr. Nash and discussed his paintings with him. They expressed interest in purchasing both of the Originals.

20. After the Show, Defendants asked Mr. Nash to bring both Originals to their Brentwood, Tennessee home so that Defendants could view them in the setting where Defendants would be displaying them if they purchased the Originals from Mr. Nash.

21. Mr. Nash agreed to let Defendants borrow both Originals for at least two days while they considered purchasing them.

22. During the time Defendants borrowed both Originals, they had unquestionable access to both Originals.

23. During the Defendants borrowed both Originals, they photographed both Originals or caused both Originals to be photographed.

4

Case 3:25-cv-00742   Document 1   Filed 07/02/25   Page 4 of 13 PageID #: 4

24. Mr. Nash never gave Defendants permission to create copies or derivatives of either of his Originals.

25. Defendants elected not to purchase either Original.

26. Mr. Nash retrieved both Originals from Defendants' home approximately two days after he let Defendants temporarily display them in their home.

27. Defendants did not communicate with Mr. Nash regarding either Original after he retrieved them from Defendants' home.

28. Without Mr. Nash's knowledge, Defendants commissioned a new artist (the "New Artist") to create forgeries of both Originals.

29. Defendants paid the New Artist substantially less money for the forgeries that Defendants commissioned than they would have paid Mr. Nash if they had purchased his Originals.

30. Mr. Nash did not discover that Defendants had created and displayed forgeries until 2024, when he found online photographs of the forgeries being used in connection with Defendants' marketing of their Brentwood, Tennessee home as they offered it for sale.

31. The forgeries that Defendants commissioned are almost exact replicas of Mr. Nash's Originals.

32. The forgeries that Defendants commissioned are not only substantially similar, but also strikingly similar, to Mr. Nash's Originals.

33. Mr. Nash did not authorize Defendants to use forgeries of his Originals to advertise their home to potential home buyers.

34. Defendants used forgeries of Mr. Nash's Originals in photographs that accompanied the marketing material of their home sale listing, including commercial home listing

services such as Redfin.

35. Defendants sold their Brentwood, Tennessee home in October 2024 for approximately $6,357,000.00 after advertising it for sale using forgeries of Mr. Nash's Originals.

36. The following photographs compare Mr. Nash's Original Summer Mist (on the left, photo taken when Mr. Nash allowed Defendants to borrow it for approximately two days in 2018), with the forgery that Defendants commissioned and used to advertise their home for sale in 2024 (on the right):

**Original Summer Mist (2018)**     **Forgery of Summer Mist (2024)**

     

37. The following photographs compare Mr. Nash's Original Becloud 5 (on the left, photo taken when Mr. Nash allowed Defendants to borrow it for two approximately days in 2018), with the forgery that Defendants commissioned and used to advertise their home for sale in 2024 (on the right):

**Original Becloud 5 (2018)**  **Forgery of Becloud 5 (2024)**

 

38. Both Originals are Mr. Nash's independent creations.

39. Both Originals are original creations of Mr. Nash.

40. Defendants' unauthorized creation and display of the forgeries of Summer Mist and Becloud 5 contributed to the successful sale of their home for approximately $6.4 million and the profits they realized from the same.

41. Upon discovering the unauthorized forgeries in 2024, Mr. Nash investigated their origin and learned that Defendants commissioned the New Artist to create unauthorized reproductions of both Originals.

42. Defendants photographed the true Summer Mist and Becloud 5 while the Originals

7

hung in their home in February 2018.

43. Defendants provided the New Artist with photographs of Mr. Nash's Originals.

44. Defendants' purpose in providing the New Artist with photographs of Mr. Nash's Originals was to commission the New Artist to reproduce the Originals.

45. Defendants acted intentionally when they instructed the New Artist to reproduce Mr. Nash's Originals (the reproductions hereinafter referred to as the "Forgeries").

46. Defendants wanted to display Mr. Nash's Originals in their home, but they did not want to pay the price he was charging.

47. Defendants did not care if they infringed Mr. Nash's rights in the Originals when they commissioned the New Artist to reproduce copies of the Originals.

48. Defendants willfully disregarded Mr. Nash's copyrights in both Originals when they commissioned the New Artist to reproduce copies of the Originals.

49. Defendants insisted that the New Artist make the Forgeries look as similar as possible to Mr. Nash's Originals.

50. The Forgeries infringe Mr. Nash's copyrights in the Originals.

51. Defendants intentionally induced, caused, materially contributed to and benefitted financially from the creation of the Forgeries.

52. By obtaining near-exact copies of the Originals for far less than their fair market value, Defendants have profited from their commission of the forgeries.

53. Mr. Nash incurred substantial expenses to create and advertise the Originals, including but not limited to material costs, advertising costs, and the costs he incurred to attend the Show as a vendor in February 2018.

54. On October 11, 2024, Mr. Nash registered a copyright for Summer Mist in the

8

United State Copyright Office.

55. A copy of the Certificate of Registration for Summer Mist, bearing Registration Number VA-2-417-582, is attached as **Exhibit A**.

56. On October 11, 2024, Mr. Nash registered a copyright for Becloud 5 in the United States Copyright Office.

57. A copy of the Certificate of Registration for Becloud 5, bearing Registration Number VA-2-417-581, is attached as **Exhibit B**.

## CAUSES OF ACTION

### *Count 1 – Contributory Copyright Infringement*

58. Mr. Nash incorporates the prior allegations as if fully restated herein.

59. Mr. Nash sues Defendants, jointly and severally, for contributory copyright infringement.

60. The Originals are original expressions subject to copyright protection under 17 U.S.C. §§ 501, *et seq*.

61. Mr. Nash is the owner of all exclusive rights, title and interest in the Originals, including the copyrights of each.

62. Mr. Nash's copyright registration for each Original constitutes *prima facie* evidence of (a) the validity of the copyright in each Original and (b) the facts stated in each corresponding certificate of registration.

63. Other than the approximately two days Mr. Nash allowed Defendants to borrow his Originals while they determined if they wanted to purchase them, Mr. Nash did not authorize Defendants' copying, distribution, reproduction, display, or use of either Original.

64. Defendants not only knew the New Artist was creating unauthorized reproductions

9

Case 3:25-cv-00742    Document 1    Filed 07/02/25    Page 9 of 13 PageID #: 9

of Mr. Nash's two Originals, but they also materially contributed to the creation of each Forgery by photographing the Originals in February 2018 (when Mr. Nash allowed them to borrow the Originals for two days), providing those photographs to the New Artist, instructing the New Artist to copy the Originals as closely as possible, and paying the New Artist substantially less for the Forgeries than Defendants would have paid for the Originals.

65. When creating the Forgeries, the New Artist acted as Defendants' agent and pursuant to Defendants' instructions. This included Defendants' instruction that the New Artist create the Forgeries to look as similar as possible to Mr. Nash's Originals.

66. The Forgeries directly infringe upon Mr. Nash's copyrights in Summer Mist and Becloud 5.

67. By inducing, causing, and materially contributing to the creation of the Forgeries, Defendants contributorily infringed upon Mr. Nash's copyrights in the Originals.

68. Defendants' conduct damaged Mr. Nash by, among other things, depriving him of the revenue he would have generated if Defendants would have paid for the Originals rather than lessening the value of the Originals through the commission of cheaper Forgeries.

69. Defendants derived a financial benefit from their commission of the Forgeries because they obtained unauthorized copies of the Originals for a significantly lower price than they would have paid to purchase the true Originals.

70. Defendants derived a financial benefit from their commission of the Forgeries by using them to assist in the marketing and sale of their Brentwood, Tennessee home for approximately $6.4 million.

71. Defendants' wrongful conduct deprived Mr. Nash of the benefit of his exclusive right to distribute, copy, display, reproduce, and sell the Originals.

72. Mr. Nash is entitled to recover from Defendants all damages that he has and will sustain, including but not limited to any gains, profits, and advantages obtained by Defendants as a result of their contributory copyright infringement.

73. The amount of such damages, gains, profits, and advantages cannot be fully ascertained by Mr. Nash at this time.

*Count 2 – Vicarious Copyright Infringement*

74. Mr. Nash incorporates the prior allegations as if fully restated herein.

75. Mr. Nash sues Defendants, jointly and severally, for vicarious copyright infringement.

76. The Originals are original expressions subject to copyright protection under 17 U.S.C. §§ 501, *et seq*.

77. Mr. Nash is the owner of all exclusive rights, title and interest in the Originals, including the copyrights of each.

78. Mr. Nash's copyright registration constitutes *prima facie* evidence of (a) the validity of the copyright in each Original and (b) the facts stated in each corresponding certificate of registration.

79. Other than the two approximately days Mr. Nash allowed Defendants to borrow his Originals while they determined if they wanted to purchase them, Mr. Nash did not authorize Defendants' copying, distribution, reproduction, display, or use of either Original.

80. Defendants commissioned the New Artist to act as their agent to create substantially similar (if not strikingly similar) copies of both Originals.

81. The New Artist complied with Defendants' instructions to create the Forgeries.

82. The Forgeries directly infringe upon Mr. Nash's copyrights in the Originals.

83. Defendants benefitted financially from the unauthorized creation of the Forgeries.

84. Defendants had the right and ability to control the infringing activity complained of in this Complaint.

85. Defendants profited from their commission of the Forgeries by obtaining unauthorized reproductions of the Originals for substantially less money than Mr. Nash would have charged them for his Originals.

86. Defendants profited from their commission of the Forgeries by using them to assist in the marketing and sale of their Brentwood, Tennessee home for approximately $6.4 million.

87. Defendants' wrongful conduct deprived Mr. Nash of the benefit of his exclusive right to distribute, copy, display, reproduce, and sell the Originals.

88. Through their actions, Defendants committed vicarious copyright infringement.

89. Mr. Nash is entitled to recover from Defendants all damages that he has and will sustain, including but not limited to any gains, profits, and advantages obtained by Defendants as a result of their vicarious copyright infringement.

90. The amount of such damages, gains, profits, and advantages cannot be fully ascertained by Mr. Nash at this time.

**PRAYER FOR RELIEF**

Based on the foregoing, Mr. Nash requests:

1. Entry of judgment in his favor and against Defendants, jointly and severally;

2. An award of Mr. Nash's actual damages and Defendants' profits;

3. That all costs be taxed to Defendants;

4. An order to seize, impound and destroy all infringing copies and records in Defendants' possession, custody, or control;

5. An award of pre-judgment and post-judgment interest as allowed by applicable law; and,

6. Such other and additional relief as this Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

Mr. Nash respectfully demands a trial by jury.

Respectfully submitted,

*/s/ Stephen J. Zralek*
Stephen J. Zralek (#18971)
Casey R. Malloy (#38440)
Gabriella C. Rush (#40372)
**SPENCER FANE LLP**
511 Union Street, Suite 1000
Nashville, TN 37219
(615) 238-6300 Telephone
(615) 238-6301 Facsimile
szralek@spencerfane.com
cmalloy@spencerfane.com
grush@spencerfane.com

*Counsel for Plaintiff Ed Nash*